**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Christopher Stewart, | No. CV-13-00779-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of Social Security, | |
| Defendant. | |

Plaintiff Christopher Stewart seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied his request for disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. For the reasons that follow, the Court will affirm the Commissioner's decision.

**I.   BACKGROUND.**

   **A.   Factual Background.**

Plaintiff testified at his hearing that he was 46 years old. A.R. 15. Plaintiff also testified that he had a tenth grade education and had received some vocational training in refrigerator repair. *Id*. Plaintiff has worked in the past as a construction and fast food laborer. Doc. 13 at 2. His last full-time position was fast food cashier. A.R. 15. The ALJ found that Plaintiff suffered from the following impairments: degenerative disc disease of the cervical and lumbar spine; cervical spondylosis; cervical and lumbar

foraminal stenosis; obesity; and mild degenerative joint disease of both hands. A.R. 13. The ALJ also found that the impairments precluded Plaintiff from performing past relevant work. A.R. 17.

### B. Procedural History.

On February 2, 2010, Plaintiff applied for disability insurance benefits and supplemental security income. A.R. 11. On February 16, 2010, he also filed a Title II application for a period of disability and disability insurance benefits. *Id*. In both applications, Plaintiff alleged disability beginning on December 1, 1990. *Id*. The claims were denied initially on May 17, 2010, and upon reconsideration on August 2, 2010. *Id*. Plaintiff filed a written request for hearing on August 9, 2010. 20 C.F.R. §§ 404.929 *et seq.*, 416.1429 *et seq*. *Id*. On January 10, 2012, he appeared and testified at a hearing before the ALJ. A.R. 11. A vocational expert also testified. *Id*.

On February 8, 2012, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. A.R. 19. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision final. A.R. 1.

## II. STANDARD OF REVIEW.

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

## III. FIVE-STEP SEQUENTIAL EVALUATION.

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears

the burden of proof on the first four steps, with the burden shifting to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through September 30, 1994, and that he has not engaged in substantial gainful activity since December 1, 1990. A.R. 13. At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; cervical spondylosis; cervical and lumbar foraminal stenosis; obesity; and mild degenerative joint disease of both hands. *Id*. At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. A.R. 14.

At step four, the ALJ found that Plaintiff:

> Ha[d] the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) subject to the following. He is able to lift and carry up to 20 lbs occasionally, and 10 lbs frequently; he can sit up to 6 hours, and stand or walk up to 6 hours in an 8-hour workday, with the option to alternate as needed between seated and standing positions; he can frequently climb ramps or stairs, and occasionally climb ladders, ropes, or scaffolds; and he can frequently balance, stoop, kneel, crouch, and crawl.

*Id.* The ALJ further found that Plaintiff was unable to perform any of his past relevant work. A.R. 17. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. A.R. 18.

## IV. ANALYSIS.

Plaintiff argues the ALJ's decision is defective for three reasons: (1) the ALJ erroneously weighed medical source evidence; (2) the ALJ improperly evaluated Plaintiff's credibility and discounted his subjective testimony; and (3) the ALJ erroneously failed to consider the third party report of Plaintiff's mother, Carol Stewart. The Court will address each argument below.

### A. Weighing of Medical Source Evidence.

Plaintiff argues that the ALJ failed to articulate sufficient reasons for giving limited weight to the opinion of his treating physician, Dr. Philo Rogers, D.O. Doc. 13 at 11. Dr. Rogers treated Plaintiff from February 2008 through at least December 2011. *Id.* at 12. On December 17, 2009, Dr. Rogers completed a check-the-box form opining that, due to back pain, degenerative disc disease, lumbar and cervical neuropathy, and herniated discs, Plaintiff was unable to perform work eight hours a day for five days a week. A.R. 479-80. Dr. Rogers opined that Plaintiff could sit less than two hours, lift less than ten pounds, stand or walk less than two hours, and carry less than ten pounds

during an eight hour work day. *Id.* Dr. Rogers submitted three check-the-box forms with substantially identical opinions on June 22, 2010, December 15, 2010, and December 8, 2011. A.R. 461-62, 477-78, 520-21. A vocational expert testified at Plaintiff's administrative hearing that an individual with such limitations would be unable to sustain full time competitive work. A.R. 50-51. The ALJ accorded Dr. Rogers' opinion little weight. A.R. 17.

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than to one of a non-examining physician. *See Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995); *see also* 20 C.F.R. § 404.1527(c)(2)-(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, consistency with the record, and support from objective evidence). The opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons if it is not contradicted by another doctor's opinion. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). A contradicted opinion of a treating or examining physician "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830-31 (citing *Andrews*, 53 F.3d at 1043).

Dr. Rogers' medical opinion was contradicted by the opinions of Drs. Bijpuria, Goodrich, and Woodard, each of whom are non-examining physicians who opined that Plaintiff had abilities that were at least consistent with light work. A.R. 17. The ALJ therefore could discount Dr. Rogers' opinion for specific and legitimate reasons supported by substantial evidence in the record.[1] *Lester*, 81 F.3d at 830-31.

---

[1] It is unclear what standard Plaintiff believes is applicable. Plaintiff's brief appears to argue both the "clear and convincing" and the "specific and legitimate" standards. Doc. 13 at 13. Because the Court finds that Dr. Rogers' medical opinion is

An ALJ can meet the "specific and legitimate reasons" standard "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986). But "[t]he ALJ must do more than offer [her] conclusions. [She] must set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Embrey*, 849 F.2d at 421-22. In according Dr. Rogers' opinion little weight, the ALJ stated that it was not consistent with the "longitudinal evidence" which has "consistently reported the claimant with full use of his upper and lower extremities, no difficulty walking, no limits in range of motion, and no abnormalities in muscle strength, reflexes, or sensation of the extremities." A.R. 17. The ALJ's blanket reference to "the longitudinal evidence" is not specific and therefore falls short of the "specific and legitimate reasons" standard of *Embrey* and *Lester*. The Court finds, however, that the other reasons that the ALJ proffered for discounting Dr. Rogers' medical opinion are specific and legitimate. As explained below, the Court also finds that they are supported by substantial evidence.

The ALJ found that the medical evidence indicates that Plaintiff's spinal impairments are less than totally disabling and that "[Plaintiff's] spinal impairments can be fairly described as stable." A.R. 16. In reaching this conclusion, the ALJ consulted records of physical examinations (A.R. 248) and MRIs (A.R. 283, 286, 288, 361-62, 512-17) that spanned from October 18, 2004, to October 26, 2011. These medical records suggest that Plaintiff's spinal health, although not ideal, has been stable and is non-disabling. A.R. 16. The ALJ also found the medical evidence indicates that Plaintiff is "neurologically intact, with full range of motion in the extremities." *Id.* In reaching this conclusion, the ALJ consulted Dr. Rogers' medical notes (A.R. 337, 393, 467, 481). The ALJ also noted that although Dr. Rogers diagnosed Plaintiff with cervical and lumbar

---

contradicted by the opinions of other doctors, the more lenient "specific and legitimate reasons" standard applies.

neuropathy, there are no electromyogram or nerve conduction velocity studies in the record that substantiate these assessments. A.R. 16. The ALJ also indicated that in a 2008 examination, a physician found that Plaintiff had "5/5 strength in the extremities, normal grip strength, normal reflexes and coordination" (*See* A.R. 303), and that Plaintiff "was also able to ambulate without assistance, and could perform a heel/toe, tandem walk, hop and squat" (*Id.*), which support the ALJ's finding. To further bolster this finding, X-ray imaging of Plaintiff's hands and knees reported only "small," "minimal," and "mild" degenerative disease at the DIP joints, and suprapatellar effusions and degenerative disease of the knees. A.R. 364-67.

The ALJ's statements regarding the weight she accorded Dr. Rogers' opinion are found on page 7 of her decision (AR 17), and her detailed discussion of the medical evidence is found primarily on page 6 (AR 16). Although this organization is not ideal, the decision makes clear that the ALJ relied on record evidence that "consistently reported the claimant with full use of his upper and lower extremities, no difficulty walking, no limits in range of motion, and no abnormalities in muscle strength, reflexes, or sensation of the extremities." A.R. 17. The discussion of the medical records on page 6 addressed these very findings in detail, with numerous citations to the record. AR 16. The Court finds the ALJ's explanation to be sufficiently clear to understand the basis for her decision.

The ALJ's detailed treatment of the medical evidence confirms that the specific and legitimate reasons she identified are supported by substantial evidence. Plaintiff vigorously argues that the ALJ committed legal error by relying primarily on the medical opinions of non-treating physicians who did not testify at Plaintiff's hearing. Doc. 13 at 18. Although Plaintiff is correct that ALJs must generally accord greatest weight to the medical opinion of a treating physician and must accord reduced weight to non-treating and non-examining physicians, the contradicted opinions of treating physicians can be discounted for specific and legitimate reasons supported by substantial evidence. The

Court concludes for the reasons outlined above that the ALJ's decision to discount Dr. Rogers' medical opinion was not legal error.

**B.     The ALJ Did not Err in Evaluating Plaintiff's Credibility.**

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so, and if there is no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

First, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. A.R. 15. Second, the ALJ found Plaintiff's statements regarding the intensity, persistence, and limiting effects of the symptoms not credible to the extent they are inconsistent with the ALJ's residual functional capacity assessment. *Id*.

The ALJ gave specific, clear, and convincing reasons for discrediting Plaintiff's testimony. First, the ALJ noted "the fact that [Plaintiff] has used narcotics during the period under review, and served a substantial prison sentence related to the same, reflects poorly on his overall credibility." A.R. 15. Second, the ALJ found that Plaintiff had lied during the application process because he had originally stated that he stopped work due to his "condition(s)." A.R. 182. At his hearing, however, Plaintiff testified that he was actually fired from his last employment in 1990, and did not leave for impairment-related reasons. A.R. 31-32.

Plaintiff argues that both of these reasons are illegitimate. First, Plaintiff asserts that previous drug use and incarceration are not clear and convincing reasons to discredit his testimony. Doc. 13 at 21. Plaintiff asserts that although a lack of candor regarding substance abuse and past incarceration may constitute a clear and convincing reason to

reject Plaintiff's testimony, *see Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002), there must be more than a mere history of substance abuse or past incarceration, *see Hinojos v. Astrue*, No. 1:11-cv-01530-SKO, 2012 WL 6738224, at *12-13 (E.D. Cal. Dec. 28, 2012) (citing *Woodsum v. Astrue*, 711 F. Supp. 2d 1239, 1262 (W.D. Wash. 2010)). The Court disagrees. Although some district courts have held otherwise, evidence of prior incarceration, particularly for a crime of moral turpitude, is a clear and convincing reason for discounting a social security claimant's testimony. *McKnight v. Comm'r of Social Sec.*, No. 1:12-cv-00726-AWI-JLT, 2013 WL 3773864, at *10 (E.D. Cal. Jul. 17, 2013) ("An ALJ may rely upon a claimant's convictions for crimes of moral turpitude as part of a credibility determination.") (citation omitted); *see also Hardisty v. Astrue*, 592 F.3d 1072, 1080 (9th Cir. 2010) (in ruling on an Equal Access to Justice Act request, the Court held the ALJ's credibility determination was substantially justified when it was based, among other factors, on the claimant's prior criminal convictions). Plaintiff testified that he was convicted and imprisoned for selling methamphetamine (A.R. 33), which is a crime of moral turpitude. *See Cole v. Hedgpeth*, No. 2:09-cv-2549-LKK TJB, 2012 WL 78389, at *7 (E.D. Cal. Jan. 10, 2012). Consequently, the ALJ's consideration of Plaintiff's criminal history was proper and supports the ALJ's adverse credibility determination.

Second, Plaintiff argues that any inconsistency between his testimony and a statement contained in a form submitted as part of his application for benefits is not a clear and convincing reason to discredit his testimony. Doc. 13 at 22. In his application, Plaintiff claimed disability beginning on December 1, 1990. A.R. 177. Because Plaintiff was fired 20 years before his application for social security insurance benefits and the ALJ found that Plaintiff could not perform any past relevant work, Plaintiff argues that the circumstances surrounding his separation from the formal work force do not logically detract from his credibility. Doc. 13 at 23. The Court disagrees. Plaintiff gave contradictory answers, in the disability application process, for why he left his last

employment. Clearly inconsistent answers given in the very process of seeking benefits surely are relevant on the issue of credibility.

### C. The ALJ Did not Err in Evaluating Third Party Credibility.

If an ALJ wishes to discount the testimony of a lay witness, she must give reasons that are germane to each witness. *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). Plaintiff argues that the ALJ committed legal error by failing to consider the report submitted to Defendant by Carole Stewart, Plaintiff's mother. Doc. 13 at 24.

The ALJ failed to explain her reasons for rejecting the opinions in Stewart's report. In fact, the ALJ did not address Stewart's report at all in her decision. The ALJ's failure to discuss Stewart's report is not legal error, however, because the report was "inconsequential to the ultimate nondisability determination" in the context of the record as a whole. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006)).

Stewart's report contains no opinions or facts regarding Plaintiff's restrictions that are not already contained in either Plaintiff's testimony or in Dr. Rogers' medical opinions. For example, Stewart opined that Plaintiff was unable to lift more than ten pounds and that he could not sit or stand for prolonged periods. A.R. 237. As discussed above, Dr. Rogers' medical opinions assessed Plaintiff with those exact restrictions and the ALJ provided specific and legitimate reasons supported by substantial evidence for rejecting them. The same reasons are germane to Stewart and undermine her report. The Court is "confident that the ALJ's failure to give specific witness-by-witness reasons for rejecting the lay testimony did not alter the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012). As such, the Court concludes that the ALJ did not commit legal error.

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **affirmed**.  The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 7th day of April, 2014.

_David G. Campbell_
David G. Campbell
United States District Judge